UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| CYNTHIA SWIGER HERCULES | : | |
| | : | Case No.: 22-10559 |
| Debtor. | : | |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Now comes Credit Acceptance Corporation ("<u>CAC</u>"), by and through counsel, and moves this Court for an Order granting it relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of its Motion for Relief from the Automatic Stay (the "<u>Motion</u>"), Movant shows unto the Court as follows:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157 and the Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The Court has the authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Middle District of North Carolina.

2. On October 28, 2022 (the "<u>Petition Date</u>"), Cynthia Swiger Hercules (the "<u>Debtor</u>") filed a voluntary petition for relief under Chapter 13 to commence the above-referenced case (the "<u>Chapter 13 Case</u>").

3. CAC is a secured creditor of the Debtor as evidenced by that certain Retail Installment Sale Contract dated April 5, 2021 (the "Contract") between D & D Truck and Auto, Inc., 1226 S. Main St., Graham, NC 27253 (the "Seller"), and Cynthia S Hercules (the sole "Buyer"). Cynthia S Hercules signed the Contract as the sole Buyer; there is no co-buyer. The

Contract was secured by a 2017 Ford Fusion, bearing Vehicle Identification Number 3FA6P0HD3HR269253 (the "Vehicle" or "Collateral"). A true and correct copy of the Contract is attached hereto as **Exhibit "A."**

4. CAC has a valid, perfected security interest in the Vehicle, as noted on the face of the North Carolina Certificate of Title for the Vehicle (the "Certificate of Title"). The Certificate of Title identifies Credit Acceptance Corporation as lienholder, with a lien date of April 5, 2021. A true and correct copy of the Certificate of Title is attached hereto as **Exhibit "B."**

5. The Contract was entered into 571 days before the Petition Date. The payoff at filing was $12,626.65. On or about February 2, 2025, the Vehicle was involved in an accident. The General issued insurance proceeds in the amount of $3,801.21, which CAC received and provisionally applied to the account. As of September 15, 2026, the current net payoff was $1,621.85 and the delinquency was $1,514.16, past due from June 5, 2026. The $3,801.21 in insurance proceeds exceeds the current net payoff. See Affidavit attached as **Exhibit "C."**

6. Upon information and belief, the JD Power Clean Retail Value of the Vehicle as of September 15, 2026 is approximately $9,500.00 (the "Valuation"). A true and accurate copy of the JD Power valuation is attached hereto as **Exhibit "D."**

7. The Debtor's Chapter 13 Plan was confirmed on January 11, 2023 (D.E. 14). Section 4.3(c) of the Plan treats Credit Acceptance Corp.'s claim as a claim secured by personal property excluded from 11 U.S.C. § 506 under the 910-day provision, to be paid by the Trustee at $312.75 per month with interest at 7.5%.

8. On or about February 2, 2025, the Vehicle was involved in an accident. CAC received and provisionally applied a $3,801.21 insurance payment from The General. The Debtor

advised that her brother will make the repairs. CAC is willing to send the repair check to the Debtor once the Vehicle has been repaired at a reputable repair shop.

9. The Contract grants CAC a security interest in all money or goods received (proceeds) for the Vehicle and all proceeds from insurance relating to the Vehicle. It further provides that, if the Vehicle is lost or damaged, CAC may use any insurance settlement either to repair the Vehicle or apply it to the account balance. CAC therefore seeks relief from the automatic stay under 11 U.S.C. § 362(d)(1) specifically to retain and apply the $3,801.21 in insurance proceeds, and any related proceeds, in accordance with the Contract and applicable non-bankruptcy law, while preserving CAC's ability to release repair funds to the Debtor after repairs are completed at a reputable shop.

## BASIS FOR RELIEF

Section 362(d) sets forth the standards for determining whether relief from stay is appropriate. Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;
> 11 U.S.C. § 362(d)(1).

1. Cause exists for relief from the automatic stay under 11 U.S.C. § 362(d)(1) because the Vehicle was damaged in an accident and the insurance proceeds are proceeds of the Collateral. The Contract grants CAC a security interest in insurance proceeds and gives CAC the contractual right to apply an insurance settlement to the account balance or use it to repair the Vehicle. CAC

has received and provisionally applied $3,801.21 from The General, and the continued stay prevents CAC from exercising those rights under non-bankruptcy law.

2. The Contract expressly grants CAC a security interest in all proceeds from insurance relating to the Vehicle and provides that, if the Vehicle is lost or damaged, CAC may use any insurance settlement either to repair the Vehicle or apply it to the account balance. CAC seeks relief specifically to retain and apply the $3,801.21 insurance proceeds in accordance with the Contract and applicable non-bankruptcy law.

3. The Debtor's confirmed Plan treats CAC's claim under Section 4.3(c) as a claim secured by personal property excluded from 11 U.S.C. § 506 and provides for payment by the Trustee at $312.75 per month with interest at 7.5%. The requested relief is limited to the insurance proceeds arising from the accident and does not seek relief to repossess, sell, or otherwise take possession of the Vehicle, nor does it seek relief under 11 U.S.C. § 1301.

4. Good cause exists to waive the fourteen-day stay imposed by Rule 4001(a)(3) because CAC seeks prompt authority to retain and apply the provisionally received insurance proceeds in accordance with the Contract and applicable non-bankruptcy law, while facilitating repair of the Vehicle if repairs are completed at a reputable shop.

5. A proposed order granting the Motion is attached as **Exhibit E.**

WHEREFORE, CAC prays for the Court to grant the following relief:

1. To enter an Order modifying the automatic stay imposed by 11 U.S.C. § 362(a) to authorize CAC to retain and apply to the account the $3,801.21 in insurance proceeds provisionally received and applied in connection with the February 2, 2025 accident involving the Vehicle, and any related insurance proceeds, in accordance with the Contract and applicable non-bankruptcy law;

2. To authorize CAC, consistent with the Contract and applicable non-bankruptcy law, to release the repair check or corresponding repair funds to the Debtor after the Vehicle has been repaired at a reputable repair shop, and to waive the fourteen-day stay under Rule 4001(a)(3);

3. To grant such other and further relief as the Court deems just and appropriate.

Dated: September 22, 2026

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Eudora F. S. Arthur

EUDORA F. S. ARTHUR
N.C. State Bar. No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2178
dorie.arthur@wbd-us.com

*Attorneys for Credit Acceptance Corporation*

## CERTIFICATE OF SERVICE

I, the undersigned, of Womble Bond Dickinson (US) LLP, hereby certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served a copy of the foregoing Motion for Relief from Automatic Stay on:

Cynthia Swiger Hercules
2560 Ashewood Drive
Snow Camp, NC 27349
*Debtor*

by depositing the same in the United States mail, first class, postage prepaid.

That on this day, the foregoing Motion for Relief from Automatic Stay was served by electronic means through the Court's CM/ECF service on:

Daniel L. Hawkins
P.O. Box 1379, Graham, NC 27253
*Attorney for Debtor*

Anita Jo Kinlaw Troxler
*Chapter 13 Trustee*

John Paul Hughes Cournoyer
*Bankruptcy Administrator*

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 22, 2026

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
NC State Bar Number 59854
555 Fayetteville St., Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2178
dorie.arthur@wbd-us.com

*Attorneys for Credit Acceptance Corporation*

# EXHIBIT “A”

## RETAIL INSTALLMENT CONTRACT - CONSUMER CREDIT DOCUMENT

ACCOUNT [redacted]

LOT # 669

| Buyer Name and Address | Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| CYNTHIA S HERCULES<br>2560 ASHEWOOD DR<br>SNOW CAMP, NC 27349 | N/A | D & D TRUCK AND AUTO, INC<br>1226 S MAIN ST<br>GRAHAM, NC 27253 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown on Page 2 as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the subsequent pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2017 Ford | Fusion | WHITE | 3FA6P0HD3HR269253 | 50,621 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of $ 3,125.00 is |
|---|---|---|---|---|
| 21.99% | $ 11,068.75 | $ 15,124.67 | $ 26,193.42 | $ 29,318.42 |

**Payment Schedule:** Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | $ | |
| | $ | |
| 66 | $ 396.87 | Monthly beginning May 05, 2021 |

COPY OF ELECTRONIC ORIGINAL

**Security:** You are giving a security interest in the Vehicle being purchased.
**Late Charge:** If a payment is more than 10 days late, You will be charged a late fee of $15.00.
**Prepayment:** If You pay early, You may be entitled to a refund of part of the Finance Charge.
**Additional Information:** Please read this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

**PROPERTY INSURANCE: You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US, as more fully described on page 3.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the Arbitration Clause. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause.

Sign **Buyer's Initials:** Inits CSH **Buyer's Initials:** ____________

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE **ARBITRATION CLAUSE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

Sign Buyer's Initials Inits CSH
Buyer's Initials ____________


**© 2012- 2017 Credit Acceptance Corporation.**
**All Rights Reserved.**



The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 04/05/2021

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

# ITEMIZATION OF AMOUNT FINANCED

1. **Cash Price** (including accessories and improvements to the Vehicle) ........ $ 14,100.00 (1)
2. Sales Tax ........ $ 437.67 (2)
3. Down-Payment Calculation:
   - Cash Down Payment ........ $ 3,125.00 (A)
   - Deferred Down Payment ........ $ N/A (B)

   **Trade-In Description**: Gross Trade-In ........ $ N/A (C)
   Make: N/A
   Model: N/A Payoff Made by Seller $ N/A (D)
   Net Trade-In (If negative number, Insert "0" in line 3(E) and itemize difference in 5(E) below) (C-D) $ N/A (E)

   **Trade-In Description**: Gross Trade-In ........ $ N/A (F)
   Make: N/A
   Model: N/A Payoff Made by Seller $ N/A (G)
   Net Trade-In (If negative number, Insert "0" in line 3(H) and itemize difference in 5(K) below) (F-G) $ N/A (H)
   Other: Manufacturers Rebate ........ $ N/A (I)

   **Total Down Payment** ........ (A + B + E + H + I) $ 3,125.00 (3)
4. **Unpaid Balance of Cash Price** (1+ 2 less 3) ........ $ 11,412.67 (4)
5. Other Charges Including Amounts Paid to Others on Your Behalf:
   *(NOTICE: A portion of these charges may be paid to or retained by Us.)
   - A. *Cost of Required Physical Damage Insurance Paid to Insurance Company ........ $ N/A (A)
   - B. *Cost of Optional Extended Warranty or Service Contract Paid to the Company named below........ $ 2,505.00 (B)
   - C. Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ........ $ N/A (C)
   - D. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ........ $ 118.00 (D)

   Other Charges (Seller must identify who will receive payment and describe purpose)
   - E. to N/A for lien or lease payoff........ $ N/A (E)
   - F. *to Phoenix American Administrators, Inc. for Optional GAP Protection ........ $ 570.00 (F)
   - G. *to THE SELLER for Document Fee $ 489.00 (G)
   - H. *to NC State Inspection for EMISSION TEST FEE $ 30.00 (H)
   - I. *to N/A for N/A $ N/A (I)
   - J. *to N/A for N/A $ N/A (J)
   - K. to N/A for lien or lease payoff........ $ N/A (E)

   Total of Other Charges and Amounts Paid to Others on Your Behalf ........ $ 3,712.00 (5)
6. Less Prepaid Finance Charge ........ $ N/A (6)
7. **Amount Financed - Unpaid Balance** (4 + 5 less 6) ........ $ 15,124.67 (7)

COPY OF ELECTRONIC ORIGINAL

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 2,505.00 Term: 36 Mos.\ 36000 Miles Company: First Automotive Service Corporation

Sign: eSigned By: Cynthia S Hercules Apr 05, 2021 6:01:36 PM EDT — 04/05/2021

Buyer's Signature Date Buyer's Signature Date

**GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required to obtain credit.** GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5F of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ 570.00 Term: 66 Mos. Provider: Phoenix American Administrators, Inc.

Sign: eSigned By: Cynthia S Hercules Apr 05, 2021 6:01:36 PM EDT — 04/05/2021

Buyer's Signature Date Buyer's Signature Date

**Notice to the Buyer: 1. Do not sign this Contract before You read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract You sign.**

**You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.**

Sign: Buyer's Signature: x eSigned By: Cynthia S Hercules Apr 05, 2021 6:01:36 PM EDT Buyer's Signature: x

Sign: Seller: D & D TRUCK AND AUTO, INC By: eSigned By: David B Perry Apr 05, 2021 6:04:17 PM EDT Title: AGENT

This Contract is signed by the Seller and Buyer(s) hereto this 5th day of April , 2021


© 2012 - 2017 Credit Acceptance Corporation.
All Rights Reserved.


The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 04/05/2021

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on Page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** You agree to pay Us a bad check charge of $25.00 (or such other amount permitted by applicable law) for any check or like instrument given by You to Us that is returned by Your bank because of insufficient funds or because Your bank account was closed.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:

- You will not remove the Vehicle from the United States or Canada without our written permission.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. We will retain a prepayment charge equal to 10% of the unpaid balance not to exceed $25 before calculating any refund credit, if permitted by applicable law. We will not credit or refund amounts less than $1.00, if permitted by applicable law.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

COPY OF ELECTRONIC ORIGINAL

**Re uired Ph sical Dama e Insurance.** You must insure Yourself and Us for the term of this Contract against loss of, or h sical damage to, the Vehicle with a policy in Your name that is acceptable to Us. We must approve the type and amount of insurance. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on page 1 of this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:

- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

Sign Buyer's Initials Inits CSH

Buyer's Initials ____________


© 2012 - 2017 Credit Acceptance Corporation.
All Rights Reserved.



The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 04/05/2021

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance


## ADDITIONAL TERMS AND CONDITIONS (cont.)

**Starter Interruption Device and GPS**. You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**Repossession of the Vehicle**. If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession**. If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle**. Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs**. If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will pay the attorney's fee not to exceed 15% of the amount due and payable under the Contract, and any court costs, as permitted by applicable law.

**Delay in Enforcing Rights and Changes of this Contract**. We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

**WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**

THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER

COPY OF ELECTRONIC ORIGINAL

**Interest After Maturity**. You further agree to a interest at 16% or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate**. Interest on any judgment awarded on this Contract will be at the Annual Percentage Rate stated on Page 1 of this Contract not to exceed 8% or at the highest rate permitted by applicable law.

**Governing Law**. The terms of this Contract are governed by the law of the state of the Seller's address shown on Page 1 of this Contract, except to the extent preempted by applicable federal law.

## ASSIGNMENT

**FOR VALUE RECEIVED**, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to **CREDIT ACCEPTANCE CORPORATION** ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

**NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth above. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.**

Sign

Seller: D & D TRUCK AND AUTO, INC By: Signed By: David B Perry Apr 05, 2021 6:04:17 PM EDT Title: AGENT

Inits: CSH

Sign Buyer's Initials ____________

Buyer's Initials ____________

NORTH CAROLINA CREDIT ACCEPTANCE CORPORATION (11-17)

© 2012 - 2017 Credit Acceptance Corporation.
All Rights Reserved.



The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 04/05/2021

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance


# ARBITRATION CLAUSE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

COPY OF ELECTRONIC ORIGINAL

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com ; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

Sign Buyer's Initials Inits CSH

Buyer's Initials ______________


**© 2012 - 2017 Credit Acceptance Corporation.**
**All Rights Reserved.**



The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 04/05/2021

# EXHIBIT “B”

# STATE OF NORTH CAROLINA

MVR-191 (Rev. 01/2017)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 3FA6P0HD3HR269253 | 2017 | FORD | 4S |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| | 11/01/2022 | |

MAIL TO

CREDIT ACCEPTANCE CORPORATION
PO BOX 513
SOUTHFIELD MI 48037-0513

| ODOMETER READING |
|---|
| 050621 |
| ODOMETER STATUS |
| |
| TITLE BRANDS |
| |

OWNER(S) NAME AND ADDRESS

CYNTHIA SWIGER HERCULES
2560 ASHEWOOD DR
SNOW CAMP NC 27349-9606

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

Wayne Goodwin
COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER: DATE OF LIEN 04/05/2021
CREDIT ACCEPTANCE CORPORATION
PO BOX 513
SOUTHFIELD MI 48037-0513

LIEN RELEASED BY:
SIGNATURE ____________________
TITLE ____________ DATE ____________

SECOND LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE ____________________
TITLE ____________ DATE ____________

THIRD LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE ____________________
TITLE ____________ DATE ____________

FOURTH LIENHOLDER: DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE ____________________
TITLE ____________ DATE ____________

ADDITIONAL LIENS:

ANY ALTERATIONS OR ERASURES VOID TITLE

MVR - 191 (Reverse)

**Federal and State law** requires that you state the mileage in connection with the transfer of ownership. Providing a false statement or failing to properly complete this form may result in fines and/or imprisonment.

## A

### FIRST RE-ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

**Name of Buyer:**____________

**Address of Buyer:**____________

"I, seller(s) certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked."

ODOMETER READING (NO TENTHS)

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.

WARNING - ODOMETER DISCREPANCY

To my knowledge the vehicle described herein:

Yes ☐ No ☐ Has been involved in a collision or other occurrence to the extent that the cost to repair exceeds 25% of fair market value.

Yes ☐ No ☐ Has been a flood vehicle.

Yes ☐ No ☐ Has been a reconstructed or a salvage vehicle.

**Date vehicle delivered to purchaser**____________

Seller(s) Signature____________

Seller(s) Hand Printed Name____________

Date______ County______ State______

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

____________seller(s)/name(s) of principal(s).

Notary Public Signature____________

Notary's Printed or Typed Name____________

My Commission expires____________ (SEAL)

Buyer(s) Signature____________

Buyer(s) Hand Printed Name____________

## B

### PURCHASER'S APPLICATION FOR NEW CERTIFICATE OF TITLE

The undersigned purchaser of the vehicle described on the face of this certificate, hereby makes application for a new certificate of title and certifies that said vehicle is subject to the following named liens and none other and that the information contained herein is true and accurate to my best knowledge and belief.

**CHECK Appropriate Block/s** (Application cannot be processed without certification of services)

☐ Title Only - Vehicle Not in Operation

☐ Title and License Plate
Class of License____________

☐ Inoperable Vehicle - Vehicle substantially disassembled and unfit or unsafe to be operated on the highway

☐ Truck Weight Desired____________

☐ Plate No. Transferred____________ (List Plate Number and Expiration)

☐ Limited Registration Plate (When property taxes are deferred)

For Hire Vehicle ☐ Yes or ☐ No

**I certify that all the above information is correct.** ____________ (customer's initials)

OWNER(S)

**Owner 1 DL#**____________ ____________
**Full Legal Name of Owner (First, Middle, Last, Suffix) or Company**

**Owner 2 DL#**____________ ____________
**Full Legal Name of Owner (First, Middle, Last, Suffix) or Company**

**Joint applicants request this title to be issued with Joint Tenants with Rights of Survivorship? Check appropriate block:** ☐ **Yes** ☐ **No**

Residence Address____________
City State Zip Code County

Mailing Address (If Different From Above)____________

Vehicle Location Address (If Different from Residence Address Above)____________

**FIRST LIEN**

Date of Lien______ Acct #______ Lien holder ID______

Lien holder Name____________

Address____________

City______ State______ Zip Code______

**SECOND LIEN**

Date of Lien______ Acct #______ Lien holder ID______

Lien holder Name____________

Address____________

City______ State______ Zip Code______

I certify for the motor vehicle described herein that I have financial responsibility as required by law.

Insurance Company Authorized in NC____________ Policy Number____________

Odometer Reading

Signature of Owner(s)____________

Date______ County______ State______

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:____________owner(s)/name(s) of principal(s).

Notary Public Signature____________

Notary's Printed or Typed Name____________

My Commission expires____________ (SEAL)

NOTE: RETAIL PURCHASER MUST APPLY FOR NEW TITLE WITHIN 28 DAYS AFTER PURCHASE OR PAY STATUTORY PENALTY. ALTERATIONS OR ERASURES WILL VOID THIS TITLE.

# EXHIBIT "C"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA

In re:

Cynthia Swiger Hercules,
Debtor(s)

Chapter 13

Bky. No. 22-10559

**STATE OF MICHIGAN** )
) **ss.**
**COUNTY OF OAKLAND** )

**AFFIDAVIT**

I, Shannon Hatten, a Bankruptcy Specialist of Credit Acceptance Corp., declare under penalty of perjury that I have personal knowledge of the information set forth below, which is true and correct to the best of my knowledge, information, and belief.

1. This affidavit is based on the loan payment records of Credit Acceptance Corp. as of September 15, 2026. These records are regularly maintained in the course of business and it is the regular practice to make and maintain these records. These records reflect the loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records and regularly use and rely upon them in the performance of my duties.

2. Credit Acceptance Corp. has a valid, perfected security interest in the following (the "Collateral"): 2017 Ford Fusion, VIN: 3FA6P0HD3HR269253.

3. $1,621.85 is the outstanding balance under the contract.

4. $1,514.16 is the amount of the existing delinquency under the contract.

5. $9,500.00 is the fair market value of the Collateral.

6. On information and belief, around February 2, 2025, the Collateral was in an accident. Credit Acceptance Corp. seeks relief from stay to apply insurance proceeds to the account in accordance with non-bankruptcy law.

Further your affiant sayeth not.

Dated: 9-21-26

Subscribed and sworn to before me on this 21st day of September, 2026

Notary Public
My commission expires: 03/04/2031

Printed Name: Shannon Hatten
Title: Bankruptcy Specialist
Creditor: Credit Acceptance Corp.

CANDACE HARSHAW
NOTARY PUBLIC
COUNTY OF MACOMB
My Commission Expires 03-04-2031
Acting in the County of Oakland
STATE OF MICHIGAN

# EXHIBIT "D"

9/15/2026

JD Power Used Cars/Trucks

**Credit Acceptance Corporation**

25505 West Twelve Mile Road
Southfield, MI 48034
248-353-2700 ext: 6409
ppindera@creditacceptance.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2017 Ford Fusion Sedan 4D SE EcoBoost 1.5L I4 Turbo |
| Region: | Southeastern |
| Period: | September 15, 2026 |
| VIN: | 3FA6P0HD3HR269253 |
| Mileage: | 122,500 |
| Base MSRP: | $23,740 |
| Typically Equipped MSRP: | $25,025 |
| Weight: | 3,438 |



## JD Power Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $4,575 | N/A | N/A | **$4,575** |
| Average Trade-In | $5,550 | N/A | N/A | **$5,550** |
| Clean Trade-In | $6,350 | N/A | N/A | **$6,350** |
| Clean Loan | $5,725 | N/A | N/A | **$5,725** |
| Clean Retail | $9,500 | N/A | N/A | **$9,500** |
| **Weekly Auction** | | | | |
| Low | $2,950 | N/A | N/A | **$2,950** |
| Average | $5,175 | N/A | N/A | **$5,175** |
| High | $7,425 | N/A | N/A | **$7,425** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

JD Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2026 JD Power

# EXHIBIT “E”

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 13 |
| CYNTHIA SWIGER HERCULES | : | |
| | : | Case No.: 22-10559 |
| Debtor. | : | |
| | : | |

**ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY**

Upon consideration of Credit Acceptance Corporation's Motion for Relief from Automatic Stay (the "Motion") and any objection to the Motion; and after due deliberation thereon; and good cause having been shown and found; it is, by the United States Bankruptcy Court for the Middle District of North Carolina, hereby:

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the automatic stay of 11 U.S.C. § 362 is hereby modified to authorize Credit Acceptance Corporation ("CAC"), in accordance with the Retail Installment Sale Contract dated April 5, 2021 (the "Contract") and applicable non-bankruptcy law, to retain and apply the provisionally received and applied insurance proceeds in the amount of $3,801.21 in connection with the February 2, 2025 accident involving the 2017 Ford Fusion, VIN No. 3FA6P0HD3HR269253 (the "Vehicle"); and it is further

ORDERED, that CAC is authorized to exercise its rights and remedies under the Contract and applicable non-bankruptcy law solely as necessary to retain and apply the insurance proceeds relating to the Vehicle, and CAC may release the repair check or corresponding repair funds to the Debtor once the Vehicle has been repaired at a reputable repair shop; and it is further

ORDERED, that because the insurance proceeds exceed the current net payoff, any surplus or other disposition of the insurance proceeds, if any, shall be handled in accordance with applicable non-bankruptcy law and any further order of this Court; and it is further

ORDERED, that no relief under 11 U.S.C. § 1301 is granted or required because the Debtor is the sole Buyer and there is no co-buyer or non-filing codebtor under the Contract; and it is further

ORDERED, that the Court shall retain jurisdiction over the subject matter of this Order and to enforce the provisions set forth herein; and it is further

ORDERED, that the fourteen-day stay imposed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is hereby waived.

END OF DOCUMENT